## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| WILLIE GORDON, | Civil No. 04-3013 (JRT/FLN) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| SHAFER CONTRACTING CO., | |
| Defendant. | |

Stephen C. Fiebiger, **STEPHEN C. FIEBIGER & ASSOCIATES, CHARTERED**, 2500 West County Road 42, Suite 190, Burnsville, MN 55337, for plaintiff.

Dominic J. Cecere, Tracey Holmes Donesky, and Joel E. Abrahamson, **LEONARD STREET AND DEINARD, PA**, 150 South Fifth Street, Suite 2300, Minneapolis, MN 55402, for defendant.

Plaintiff Willie Gordon brought this lawsuit against his former employer, defendant Shafer Construction Co. ("Shafer"), alleging race and age discrimination and harassment and hostile work environment under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e *et seq.*; 42 U.S.C. § 1981, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.* Shafer moves for summary judgment on all of Gordon's claims. For the reasons discussed below, the Court grants Shafer's motion for summary judgment.

**BACKGROUND**

Gordon is a 52-year-old black male. Shafer is a construction company, specializing in road paving, earthwork, and sewer work. Gordon worked as a laborer seasonally at Shafer from June 1994 to June 2003. Shafer's employees were unionized and subject to collective bargaining agreements ("CBA"). Gordon, as a laborer, had been a member of the laborers' union. Aside from some disputes regarding his pay, which he discussed with management at Shafer, Gordon had not had any serious employment issues prior to 2003.

In early 2003, the union representative, Frank Loeffler, spoke with Gordon's wife. Although the exact chain of events is not entirely clear, it appears that Gordon's wife, an employee of Northwest Airlines, purportedly told Loeffler that she and Gordon would be moving out of Minnesota, and that Gordon would not be returning to Shafer for the 2003 construction season. Loeffler relayed this information to Jason Zins, job supervisor at Shafer. In addition, Gordon also apparently asked Loeffler to transfer his union membership to Kentucky, and his membership was transferred.

Around this same timeframe, Shafer held its annual pre-season meeting for its employees. Although Shafer provided its employees with information at the meeting, it was not necessarily mandatory for returning employees to attend the meeting. One piece of information provided to employees at the pre-season meeting was the employee manual, which contained Shafer's anti-discrimination policy, and which directed employees to contact Shafer's President, Brad Mattson, Shafer's Treasurer, Michelle Mattson-Weiss, or Zins regarding concerns about discrimination or harassment. The

manual provided work and home telephone numbers for each of those individuals. Shafer mailed the employee manual to employees who did not attend the pre-season meeting.

Gordon did not attend the pre-season meeting in 2003, and Zins claims that he did not contact Gordon after the meeting because he believed that Gordon would not be returning to Shafer, based on his conversation with Loeffler. Gordon later called Shafer in spring 2003 to inquire about his work assignment, but Shafer told him he had not been assigned work because Shafer thought he had quit. Shafer also told Gordon that all the laborer positions were full, but Shafer offered Gordon a job as a roller operator. The roller operator position was in a different union than the jobs Gordon had previously held. Gordon had spent nine years working at jobs in the laborers union, and only needed to work one more year in order to achieve certain seniority and pension rights. Gordon claims that he wanted to continue to work as a laborer, or in any other position that would allow him to stay in the laborers' union, in order to continue to accumulate seniority. Gordon claims that Shafer knew about his desire to work within the laborers' union, but that it did not offer him a position within the laborers' union.

Gordon began working on the roller operator machine. While working on the roller operator machine, Gordon was approached by the business agent from the "49ers union," which was the union for the roller operator position. When the business agent learned that Gordon was not a member of that union, the business agent told Gordon to stop working at the machine, and Gordon complied. Gordon claims that he was not asked if he wanted to join that union.

Gordon spoke to Zins after the roller operator incident, and asked him for other work. Zins told him that things were slow at Shafer, and that there were no other positions open at that time. Gordon later contacted Zins on June 9, 2003, again looking for work, but Zins told him that nothing had changed, and that there were no jobs for him. Gordon asked Zins if he could use him as a reference for other jobs, and Zins said he could. Zins stopped considering Gordon for other positions.

Gordon did not work for Shafer again, and brought this lawsuit in 2004, claiming that Shafer unlawfully refused to assign him work in 2003 based on his age and race. Gordon also claimed that he had been subject to a hostile work environment at Shafer, claiming that during his employment there, his supervisor, Gary Heilig, used racial epithets in Gordon's presence and had made comments of sexual nature. Gordon also claimed that co-workers at Shafer, including Gary's son Boyd Heilig, had also used racial epithets. Shafer moves for summary judgment on Gordon's claims.

## ANALYSIS

### I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate in the absence of any genuine issue of material fact and when the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A court considering a motion for summary judgment must view all of the facts in

the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II. TITLE VII AND SECTION 1981

Gordon asserts three claims under Title VII and § 1981: (1) wage discrimination during 2001 and 2002; (2) failure to assign Gordon work in 2003; and (3) harassment and hostile work environment. The Court will address each claim below.[1]

### 1. Wage Discrimination

Title VII and § 1981 prohibit discrimination in pay based on race. *See* 42 U.S.C. §§ 2000e-2; 1981. Gordon claims that he was paid less as a gate guard than white gate guards. However, Shafer offers evidence, which Gordon does not dispute, showing that Gordon received the gate guard wage set forth in the CBA, as did the white gate guards.

Gordon has failed to raise a genuine issue of material fact with respect to his wage claims, and accordingly, the Court grants Shafer's motion for summary judgment on those claims.

---

[1] As an initial matter, Shafer argues that Gordon's ADEA and Title VII claims are time-barred because he did not file his charge of discrimination with the EEOC within the 300-day deadline under 42 U.S.C. § 2000e-5.

Gordon responds that although he did not file a formal charge with the EEOC within the deadline, he submitted a questionnaire to the EEOC regarding his claims, and requests that his questionnaire be considered equivalent to the filing of a formal charge for limitations purposes.

The Court finds that Gordon's questionnaire qualifies as a "charge" for limitations purposes. *See Schlosser v. Westinghouse Elec. Co. LLC*, 2001 WL 1746574 (E.D. Mo. Dec. 18, 2001) (holding that questionnaire did qualify as a charge). Accordingly, the Court will address Gordon's ADEA and Title VII claims on the merits.

## 2. Failure to Assign Gordon Work in 2003

Claims of race discrimination under Title VII and § 1981 are analyzed under the *McDonnell Douglas* burden-shifting framework. *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Griffith v. City of Des Moines*, 387 F.3d 733, 736-37 (8th Cir. 2004) (reaffirming that race discrimination claims under Title VII are analyzed under *McDonnell Douglas*); *Patterson v. McLean Credit Union*, 491 U.S. 164, 186 (1989) (applying framework to claims under 42 U.S.C. § 1981). Under *McDonnell Douglas*, the plaintiff first is required to establish a prima facie case of discrimination. The burden of production then shifts to defendant to assert a legitimate reason for the allegedly discriminatory action. *McDonnell Douglas*, 411 U.S. at 802. If the defendant is able to do so, the burden shifts back to the plaintiff to establish that the asserted legitimate reason was merely a pretext for a discriminatory action. *Id.* at 804.

In order to establish a prima facie case of race discrimination, a plaintiff must demonstrate that (1) he is a member of a protected class; (2) he was qualified for the job in question; (3) he suffered an adverse employment action; and (4) the facts permit an inference of discrimination. *Taylor v. Sw. Bell Tel. Co.*, 251 F.3d 735, 740 (8th Cir. 2001). Similarly, in the failure-to-hire context, a plaintiff must allege that (1) he belongs to a protected class; (2) he applied and was qualified for a job for which the defendant was seeking applicants; (3) he was rejected; and (4) the defendant sought applications from others. *Chambers v. Wynne Sch. Dist.*, 909 F.2d 1214, 1217 (8th Cir. 1990).

Gordon argues that Shafer knew or should have known that Gordon was planning to return to his position as gate guard at Shafer for the 2003 construction season, and that Shafer's failure to provide him with his old job constitutes actionable discrimination, under either an adverse employment action or failure-to-hire theory.

Shafer contends that Gordon has failed to set forth a prima face case under either an adverse action or failure-to-hire theory. Shafer argues that Gordon did not suffer an adverse employment action because he was not terminated and voluntarily chose to leave. Shafer also argues that Gordon did not apply and was not rejected for a position because Shafer thought he had quit.

Gordon denies that he intended to quit. Nevertheless, Gordon did not attend the annual pre-season meeting, and he did not contact Shafer regarding his position until the position had been filled. Moreover, Gordon offers no evidence contradicting Shafer's assertion that company officials thought Gordon had quit, based on Loeffler's conversations with Gordon's wife and Zins.

Viewing the facts in the light most favorable to Gordon, and assuming *arguendo* that Gordon did establish a prima facie case of race discrimination under either an adverse action or failure-to-hire theory, it is clear that Shafer has articulated a legitimate, nondiscriminatory reason for its failure to provide Gordon with his old job in the 2003 construction season, and that Gordon has failed to offer any evidence that this reason is pretextual. Accordingly, the Court grants Shafer's motion for summary judgment on Gordon's claims that Shafer unlawfully failed to assign him work in the 2003 construction season.

### 3.     Hostile Work Environment

Harassment of an employee based on race is prohibited conduct under Title VII. Hostile work environment harassment occurs when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Palesch v. Mo. Comm'n on Human Rights*, 233 F.3d 560, 566 (8th Cir. 2000) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotations omitted)).  To prevail on his hostile work environment claim, Gordon must present evidence that: (1) he belongs to a protected group; (2) he was subject to unwelcome harassment; (3) the existence of a causal nexus between the harassment and his protected group status; (4) the harassment affected a term, condition, or privilege of employment; and (5) his employer knew or should have known of the harassment and failed to take proper action.[2]  The complained of conduct must have been severe or pervasive enough to create an objectively hostile work environment.  *Harris*, 510 U.S. at 21.  The party opposing summary judgment must provide sufficient probative evidence to permit a verdict in its favor rather than relying on conjecture and speculation.  *Palesch*, 233 F.3d at 568.

If the alleged harassment was sufficiently severe to state a claim of hostile work environment, the Court must then determine whether the alleged harasser was a co-

---

[2] This final element applies to allegations of non-supervisory harassment, but not to allegations of supervisory harassment. *See Carter v. Chrysler Corp.*, 173 F.3d 693, 700 (8th Cir. 1999).

worker or a supervisor. If the former, the plaintiff must also show that the employer "knew or should have known of the conduct and failed to take proper remedial action." *Cheshewalla v. Rand & Son Const. Co.*, 415 F.3d 847, 850 (8th Cir. 2005). If the latter, the employer is vicariously liable for the harassment unless it can establish the "affirmative defense" set forth in *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998). *Id.* The affirmative defense comprises two necessary elements: (a) the employer exercised reasonable care to prevent and correct promptly any racially or sexually harassing behavior, and (b) the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. *Burlington Indus.*, 524 U.S. at 765. The affirmative defense is available only when no tangible employment action is taken. *Faragher v. City of Boca Raton*, 524 U.S. 775, 807-08 (1998).

Gordon contends that Shafer created a hostile work environment based on race and sex in violation of Title VII. Specifically, Gordon asserts that Gary, a supervisor, and his son Boyd, a co-worker, used racial epithets. Gordon also asserts Gary made inappropriate comments to women, however, he acknowledges that most of these incidents did not occur in his presence, and that he simply heard about them from others.

Viewing the facts in the light most favorable to Gordon, and assuming that his allegations of harassment are sufficient to establish a hostile work environment claim, the Court finds Gordon's hostile work environment claims fail as a matter of law.

First, with respect to Boyd, a co-worker, Gordon did not allege that Shafer knew or should have known of Boyd's offensive behavior. Second, with respect to Gary, a

supervisor, the Court finds that Shafer has established the affirmative defense set forth in *Burlington Industries*.[3] It is undisputed that Shafer had an employment manual that instructed employees to contact Mattson, Mattson-Weiss, or Zins if they felt they were being harassed. It is also undisputed that Shafer provided employees copies of the manual at the annual pre-season meeting. In addition, although Gordon does not admit receiving the handbook, he does not dispute that Shafer submitted sign-in sheets with Gordon's signature, which purport to show that Gordon did receive the handbook and attend Shafer's anti-discrimination training. Finally, although Gordon claims he did not know he was supposed to contact those individuals if he was subject to harassment, it is undisputed that Gordon spoke with those individuals on a number of other occasions regarding job-related concerns.

Given these undisputed facts, the Court finds Shafer exercised reasonable care to prevent and correct promptly any harassing behavior, and that Gordon unreasonably failed to take advantage of the corrective opportunities provided by Shafer. Accordingly, the Court grants Shafer's motion for summary judgment on Gordon's hostile work environment claims.

### III. ADEA CLAIM

Gordon argues that Shafer's failure to assign him work during the 2003 construction season was also unlawful discrimination under the ADEA. As with claims under Title VII, claims under the ADEA are analyzed under the *McDonnell Douglas*

---

[3] As set forth above, the Court finds that Gordon did not suffer an adverse employment action. Accordingly, the affirmative defense is available to Shafer.

burden-shifting framework. *McDonnell Douglas*, 411 U.S. at 802; *Haas v. Kelly Servs., Inc.*, 409 F.3d 1030, 1036 (8th Cir. 2005). Under the first part of the *McDonnell Douglas* framework, Gordon is required to make out a prima facie case of age discrimination. Gordon must show that: (1) he was at least 40 years old, (2) he suffered an adverse employment action, (3) he was meeting Shafer's reasonable expectations at the time of his termination, and (4) he was replaced by someone substantially younger. *See Haas v. Kelly Servs., Inc.*, 409 F.3d 1030, 1035 (8th Cir. 2005); *McDonnell Douglas*, 411 U.S. at 802.

It is undisputed dispute that Gordon was at least 40 years old, that he was meeting Shafer's reasonable expectations, and that Shafer hired younger people for laborer positions during the 2003 season. The parties dispute here, as they did regarding Gordon's Title VII claim, whether he suffered an adverse employment action, and they each raise the same arguments in support of their positions.

For the reasons set forth above, the Court finds that even if Gordon established a prima facie case of age discrimination, he offered no evidence tending to show that Shafer's asserted reason for not assigning him work in 2003 was a pretext for age discrimination. Accordingly, the Court grants Shafer's motion for summary judgment on Gordon's ADEA claims.

## ORDER

Based on the foregoing, all the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that defendant's motion for summary judgment [Docket No. 13] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: March 22, 2006                          s/ John R. Tunheim
at Minneapolis, Minnesota.                 JOHN R. TUNHEIM
                                                              United States District Judge